UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EAGLE ROCK SANITATION, INC., an Idaho corporation, and TILLMAN HATHAWAY, an individual,<br><br>                    Plaintiffs,<br><br>        v.<br><br>JEFFERSON COUNTY, a political subdivision of the State of Idaho,<br><br><br>                    Defendant. | Case No. 4:12-CV-00100-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Pending before the Court in the above-entitled matter are Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Partial Summary Judgment, and related Motions to Strike. The matters are ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Eagle Rock Sanitation, Inc. (Eagle Rock) is an Idaho corporation in the business of solid waste disposal whose primary place of business is in Bonneville County, Idaho, but it also conducts business in Jefferson County, Idaho. Eagle Rock provides solid waste disposal services to residents of Jefferson County and, currently, two businesses located within the City of Rigby. Plaintiff Tillman Hathaway (Hathaway) is a resident of Jefferson County, Idaho living outside of the City of Rigby and who is a customer of Eagle Rock for his residential garbage disposal.

The facts giving rise to this action are Jefferson County's decisions in September and October of 2011 to charge both in-county and out-of-county solid waste haulers, including Eagle Rock, $32.40 per ton to dump at Jefferson County's solid waste facilities. The City of Rigby, who employs its own solid waste collectors, was exempt from the $32.40 charge. All property owners in Jefferson County are charged an annual $45.00 for initial access fee to Jefferson County's two landfills. This access fee allows residents of Jefferson County to bring and deposit their garbage in the County's landfills at no additional cost.

Jefferson County has billed Eagle Rock the $32.40 charge for the waste it has dumped at the Jefferson County landfills for its customers, including Plaintiff Hathaway and its customers located within the City of Rigby, from November 1, 2011 through January of 2012 for a total of $23,343.79. Eagle Rock has refused to pay the charge claiming it is unconstitutional, a disguised tax, and otherwise improper.

As a result of the County's actions, Eagle Rock and Plaintiff Hathaway filed the

**MEMORANDUM DECISION AND ORDER - 2**

instant action. The claims raised in the Second Amended Complaint allege one count for violation of Equal Protection pursuant to 42 U.S.C. § 1983, four counts seeking Declaratory Judgment base on Idaho law, and one count for violation of Equal Protection pursuant to Article 1, Section 2 of the Idaho Constitution. (Dkt. 43.) Jefferson County has filed a Counterclaim to recoup the unpaid $23,343.79 that it claims Eagle Rock owes. (Dkt. 45.)

Both sides have filed cross-motions for summary judgment. Plaintiffs filed a Partial Motion for Summary Judgment seeking a declaration that the $32.40 dumping or "tipping" fee is a disguised tax and invalid. (Dkt. 41-1.) Defendant's Motion seeks a judgment as a matter of law on all claims including its counterclaim. (Dkt. 26.)

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof

**MEMORANDUM DECISION AND ORDER - 3**

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

---

[1] *See also,* Rule 56(3) which provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM DECISION AND ORDER - 4**

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## STANDING

Defendant challenges the standing of Eagle Rock and Hathaway to bring this action. The Court finds in applying *Miles v. Idaho Power Company*, 778 P.2d 757, 763 (Idaho 1989), Eagle Rock and Hathaway have meet the standing requirements. The Plaintiffs have each alleged injury in fact and relief requested will provide redress for the claimed injury. Additionally, Hathaway's injury claim is one not suffered by *all* citizens of Jefferson County.

## ANALYSIS

The Court will begin its analysis with the federal Equal Protection claim raised by Plaintiffs.

**1.      Defendant's Motion for Summary Judgment - § 1983 Claim**

**A.  General Background**

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities

**MEMORANDUM DECISION AND ORDER - 5**

secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The parties in this case do not appear to dispute that the action occurred under color of law. As such, the focus of the Court's inquiry on this motion is on the second element – whether the action resulted in a deprivation of a constitutional or federal statutory right.

### B. Equal Protection Clause and the Standard of Review

The right claimed to have been violated here is Plaintiffs' Equal Protection right which is protected by the Fourteenth Amendment of the federal Constitution. "To succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted).

Defendant argues the Plaintiffs have not shown any discriminatory purpose, differential treatment, or deprivation of any constitutional or federal right. (Dkt. 26-5 at 5-11.) Plaintiffs' § 1983 claim alleges: "Defendant acted under color of law when it enacted the Tipping Fee and limited its application to in-county haulers and out-of-county solid waste

**MEMORANDUM DECISION AND ORDER - 6**

haulers and exempted from its application the City of Rigby." (Dkt. 43 at ¶ 33.) Plaintiffs argue there are two similarly situated classes which have been discriminated against. (Dkt. 48 at 11.) The first class are the solid waste haulers within Jefferson County, which includes both Eagle Rock and the City of Rigby. As to this class, Plaintiffs claim Eagle Rock has been discriminated against because it is charged $32.40 to dump waste while the City of Rigby garbage haulers do not have to the pay the tipping fee.

The second class are the residents of Jefferson County, which includes Plaintiff Hathaway and residents of the City of Rigby. For this second class, the Plaintiffs claim the citizens of Jefferson County outside of the City of Rigby have been discriminated against because they are forced to use a hauler who is not exempt from the $32.40 charge while citizens of the City of Rigby use a hauler who is exempt.

In reply, Defendants argue the pertinent classification is for-profit vs. non-profit haulers. (Dkt. 49 at 4.) Given the standard applicable to this Motion for Summary Judgment, the Court will use the classifications argued by the Plaintiff :  1) solid waste haulers within Jefferson County and 2) residents of Jefferson County. These classifications essentially raise the question of whether or not the Jefferson County unconstitutionally distinguished the City of Rigby, by granting it an exemption from the $32.40 charge, from the other Jefferson County solid waste haulers and the non-Rigby residents of Jefferson County.

> "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.' " *Plyler v. Doe,* 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920)). In determining whether a statute, regulation, or ordinance violates the Equal Protection Clause of the United States Constitution, we begin our

**MEMORANDUM DECISION AND ORDER - 7**

analysis by determining the proper level of scrutiny to apply for review. We apply strict scrutiny if the governmental enactment "targets a suspect class or burdens the exercise of a fundamental right." *United States v. Hancock,* 231 F.3d 557, 565 (9th Cir.2000). When applying strict scrutiny, we ask "whether the [ordinance] is narrowly tailored to serve a compelling governmental interest." *Ball v. Massanari,* 254 F.3d 817, 823 (9th Cir. 2001). If the ordinance does not concern a suspect or semi-suspect class or a fundamental right, we apply rational basis review and simply ask whether the ordinance "is rationally-related to a legitimate governmental interest." *Id.*

*Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002)

The parties agree that the rational basis review is the applicable standard here since there is no suspect class or challenge to a fundamental right. Under that standard, legislative action is valid "if the classification itself is rationally related to a legitimate government interest." *United States Dept. of Agric. v. Moreno*, 413 U.S. 528, 533 (1973); *see also City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985). In applying the rational basis standard, the Court must engage in a two-tiered inquiry. First, the Court must "determine whether the challenged legislation has a legitimate purpose" and, second, "whether the challenged classification promotes that purpose." *O'Neal v. City of Seattle*, 66 F.3d 1064, 1067 (9th Cir. 1995) (quoting *Jackson Water Works, Inc. v. Public Util, Comm'n of Cal.*, 793 F.2d 1090, 1094 (9th Cir. 1986). The parties disagree as to both inquiries.

This Court must determine if there is a "plausible basis" for the County's dumping fee policy and if the classification promotes that policy.

It is well established a legislative choice is not subject to courtroom fact-finding on rational-basis review, and may be based on rational speculation unsupported by evidence or empirical data. Judicial review is at an end once the court identifies a plausible basis on which the legislature may have relied.

**MEMORANDUM DECISION AND ORDER - 8**

> *Rui One Corp.,* 371 F.3d at 1155; *accord, SeaRiver Maritime Financial Holdings, Inc. v. Mineta,* 309 F.3d 662, 680 (9th Cir.2002); *Jackson Water Works, Inc. v. Public Utilities Comm'n of State of Cal.,* 793 F.2d 1090, 1094 (9th Cir.1986) ("[a]ll that is needed to uphold the state's classification scheme is to find that there are 'plausible,' 'arguable,' or 'conceivable' reasons which may have been the basis for the distinction"); *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority,* 825 F.2d 367, 370 (11th Cir.1987) ("the federal courts do not sit as arbiters of the wisdom or utility" of economic legislation) (citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 469, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)).

*Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 1006-07 (E.D. Cal. 2006)

The Court does not sit in judgment of the wisdom or desirability of the policy and there is a presumption that governmental classifications do not violate the Equal Protection Claus unless they burden a suspect class or fundamental interest. *See McQuesary v. Blodgett*, 924 F.2d 829, 835, n. 7 (9th Cir. 1991) (*citing City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

## C.   Is the Dumping Fee Rationally Related to a Legitimate Governmental Interest?

As to the first inquiry, the Defendant claims several legitimate purposes for the $32.40 charge: 1) raising revenue, 2) maintaining competitive prices with neighboring county landfills, and 3) preventing premature exhaustion of the limited resource. (Dkt. 49 at 4-7.)[2]

---

[2] Defendant's reply brief argued an additional legitimate purpose in reducing the administrative burden of verifying the origin of waste deposited at the landfills. (Dkt. 49 at 2.) The Plaintiffs have filed a Motion to Strike the Affidavits filed with the reply brief that raised this new argument. The Court finds this could also be a legitimate purpose but has not put any weight on it given it was not raised in the initial briefing and the Plaintiffs have not had an opportunity to address it. Plaintiffs also filed a second Motion to Strike certain portions of the third Affidavits of Jim Boulter and Tad Hegsted. (Dkt. 58.) Again, the Court has not considered any new arguments presented in the reply brief that the

Plaintiffs dispute these alleged interests are legitimate arguing they were not the "impetus" for the classification or the charge, the charge exceeded any need for revenue by the solid waste department, the charge is not competitive to nearby counties, and the charge does not address any concern over premature consumption of the landfill resource. (Dkt. 48 at 13-15.) The Court has reviewed the legislation and the record as submitted by the parties on this issue and finds as follows.

The legislation in question imposes a $32.40 charge to commercial solid waste haulers, except those the City of Rigby – effectively requiring Eagle Rock to pay $32.40 per ton to use the landfills in Jefferson County. The Court finds the Defendant has stated legitimate purposes for the legislative action as: raising revenue, regulating the use of the landfill and preserving the resource.  Raising revenue, particularly in the current economic climate, is a legitimate interest for a municipality. Services provided by the County of Jefferson, such as landfills, cost money to operate and maintain. Imposing a charge to generate revenue to pay for the landfill's operation is a legitimate interest. Though the Plaintiffs question the need for additional revenue, particularly when a portion of said revenue is alleged to being used to pay for the County courthouse, the fact remains raising revenue to provide services is a legitimate interest for Jefferson County. That Plaintiffs believe the revenue is not needed does not defeat the fact that this is a legitimate purpose.

Likewise, regulating the landfill by way of a usage charge to finance current

Plaintiffs were not given the opportunity to address. As such, the Motions to Strike (Dkt. 50, 58) are moot.

**MEMORANDUM DECISION AND ORDER - 10**

operations as well as planning for future landfill needs are legitimate interests. By its very nature, the landfill is a finite resource that will one day reach its capacity; whether that be in five years or the estimated seventy years. Maximizing/regulating the resource and planning for the future needs of the County and its residents are legitimate purposes. Therefore, the Court finds the dumping fee is rationally related to legitimate governmental interests.

### D.  Do the Classifications Promote the Governmental Interests?

#### 1) Classification of Commercial Haulers

Now the Court must determine whether the challenged classifications promote the purposes for the dumping fee. The County argues the City of Rigby was legitimately exempt from the charge "on the basis that it was non-profit entity <u>and</u> in exchange for non-monetary consideration in the form of city services not charged against the County." (Dkt. 26-1, Aff. Hegsted at ¶ 11) (emphasis in original).

On September 26, 2011, the Jefferson County Commissioners voted unanimously to charge the regular rate for out-of-county garbage haulers for *all commercial haulers* (out-of-county and in-county) effective November 1, 2011.  Dkt. 48-2, pp.7-8.  In Jefferson County Commissioner Meeting Minutes of October 24, 2011, indicate "that in the Commissioners minds municipalities with solid waste departments were not considered in the [September 26, 2011] motion." Dkt. 48-2, p. 9.  The October 24, 2011 minutes do not show any motion or vote by the Commissioners to exclude the City of Rigby from the commercial hauler dumping fee.  However, Chairman Karren apologized that the City got a letter in reference to the commercial hauler dumping fee.  *Id.* The parties do not dispute the City of Rigby has

not paid a dumping fee.

The City of Rigby representatives at the October 24, 2011 meeting testified the City of Rigby had received a letter regarding commercial hauler tonnage fee and that the impact to the City of Rigby would be $84,000 to $100,000. *Id.* The City of Rigby representatives challenged the procedure used to pass and charge the dumping fee.  The City of Rigby also wanted to confirm there would be no charge by the County based on the water for sludge agreement the City and County had executed in 2010. *Id.*

Commissioner Hegsted indicated at the October 24, 2011 meeting that the dumping fee was "because of increased costs they felt the way to increase revenue was through a commercial hauler fee." Dkt. 48-2, p. 10.  Eagle Rock's representative indicates their fees to their residential customers will go up $4.50 per month.  *Id.*

The Court finds it is undisputed that an exemption to the dumping fee was granted to the City of Rigby on the basis that is was non-profit/governmental entity <u>and</u> in exchange for non-monetary consideration in the form of city services not charged against the County.  Aff. Boulter (County Commissioner), Dkt. 26-2, ¶ 10 and Aff. Hegsted (County Commissioner), Dkt. 26-1, ¶ 11 (emphasis in affidavits).[3]

### i) Was non-monetary consideration exchanged?

The Court will first address the non-monetary consideration basis for treating the City

---

[3]The Court could not locate in the record a copy of any minutes wherein the Jefferson County Commissioners voted for such an exemption. This Due Process issue has not been raised by the parties, so the Court will assume for purposes of the pending motions that the exemption was properly approved by the County Commissioners.

**MEMORANDUM DECISION AND ORDER - 12**

of Rigby as a commercial hauler of garbage differently than the other commercial haulers of

garbage in Jefferson County.[4]   If this basis exists, the Court need not reach the alternative

argument of non-profit status as a basis for classification of commercial haulers.  The Court

asked the parties to direct the Court to exactly what evidence of non-monetary consideration

existed in the record.  Both sides filed Notices of Reference to the record.  Dkts. 60 and 61.

The evidence in the record indicates the "non-monetary consideration" referenced in

the  October 24, 2011 minutes of the County Commissioners as well as the Boulter and

Hegsted affidavits was the agreement between the County and City regarding waste from the

City's water treatment plant. The Court finds the water treatment plant agreement is the *only*

non-monetary consideration presented by the County.[5] This is consistent with the deposition

of  Jerald Raymond, Dkt. 48-3, p. 4 (page 33 of depo transcript):

Q. What services does the City of Rigby provide to the county?

A. What specific services?

Q. Yes.

---

[4]This reason for exempting the City of Rigby in exchange for non-monetary consideration and for public policy reasons was argued in a footnote in Defendant's reply brief. (Dkt. 49 at 2 n. 1.) The Court finds it appropriate to consider this reason as it was also included in the Affidavits filed with the initial briefing on the Motion for Summary Judgment. (Dkt. 26, Affs. Hegsted, Boulter.)

[5]Jefferson County states in its Notice of References, Dkt. 61, that "it is important to note that the non-monetary compensation exchanged which is articulated herein was not necessarily all of non-monetary compensation that may have been exchanged, but instead, this explanation to the court is targeted specifically at the court's inquirey about water and/or sludge services."  Regardless of this statement by counsel, the Court notes no references to any other non-monetary compensation or consideration evidence was provided by the County to support the non-monetary consideration basis for differentiating the City of Rigby from other commercial haulers.

**MEMORANDUM DECISION AND ORDER - 13**

A. The one that I'm aware of is our water, potable water to the courthouse for the sprinkling, those types of thing.

Q. Does the city charge you for those?

A. Not that I am aware of.

Q. And who would have that information?

A. That would be also the county clerk and/or the city clerk.

Q. Anything else the city would provide to the county?

A. Not that I can think of at this moment.

Plaintiffs argue that "Defendant did not and currently does not exchange non-monetary consideration in the form of city services charged against the county for exemption....Rather, Defendant exchanges non-monetary consideration with the City of Rigby in the form of disposal of the City of Rigby's sludge for water services provided to Defendant facilities provided by the City of Rigby." (Dkt. 48 at 4) (citing Dkt. 48, Ex. B, Raymond Depo. at 32-33 and Ex. G.)

The Court has examined the agreement cited by the parties and finds it is not related to the dumping of the City of Rigby's residents/businesses' garbage at the landfill and cannot therefore serve as *quid pro quo* for the exemption. The Memorandum of Understanding between the County and the City of Rigby, Dkt. 48-8, clearly limits its scope to the disposal of "dry waste material from the wastewater treatment plant at the Circular Butte Landfill in exchange for and consideration of no charge for [City of Rigby] water delivered to the Jefferson County Courthouse grounds."  Because the Memorandum of Understanding does

**MEMORANDUM DECISION AND ORDER - 14**

not in anyway discuss any services or consideration the City provides to the County as *quid pro quo* for the disposal of residential or commercial garbage collected by the City of Rigby sanitation department and deposited at the Jefferson County landfills, the Memorandum of Understanding cannot be used to claim non-monetary consideration was given by the City to the County for garbage disposal.  The *quid pro quo* given by the City and the County need not be of exactly equal value to serve as proper justification, but the *quid pro quo* does need to be related to differentiation that is occurring between commercial haulers of garbage.  The Memorandum of Understanding entered into in 2010 does not carry the County's burden of establishing that any non-monetary consideration has been given to the  County by the City to support the County's argument that it treats the City of Rigby different because of non-monetary consideration it receives.  Moreover, the County concedes in its Notice of References the agreement regarding the sludge is irrelevant as such agreement has nothing to do with the legal challenges to the dumping fee.  Dkt. 61, ¶ D.

> **ii) Does non-profit classification promote the governmental interests for the dumping fee?**

Next Jefferson County argues the non-monetary consideration was not the *sole* reason the County afforded the City of Rigby the exemption.  The County granted the exemption  as the City of Rigby's is a not-for-profit governmental  entity.  This distinction was explained in the deposition of Jerald Raymond, Dkt. 48-3, p. 3 (deposition transcript pp. 31-32):

> Q. But their waste – when the City of Rigby dumps their waste in the

Circular Butte, they're not charged?

A. They're a nonprofit so they are not – they are a municipality, so that would be – to the best of my knowledge they are not charged additionally.

Q. What about the other municipalities in Jefferson County like the City of Roberts or the City of Menan or Mud Lake or Terreton?

A. They do not offer that service to their citizens to the best of my knowledge.

Q. But they're non-profits?

A. I'm sorry?

Q. They are nonprofit entities also, the cities are nonprofit entities just like the city of Rigby?

A. They do not offer the service that the City of Rigby does.

Q. So it's not just because they're non-profits as cities; it is because the City of Rigby collects the refuse. Is that the difference?

A. That would be a reasonable difference.  So to take that one step further if the City of Roberts or the city of whatever offered the same service, they would be given the same consideration that the city of Rigby is given.

Jefferson County also argues in their briefing that if any commercial hauler is a non-profit company, it would give the exemption to that company as well.  This may or may not raise a separate Equal Protection argument, but the Court need not address such argument as the City of Rigby is the only non-profit commercial hauler receiving the exemption in Jefferson County.

In the Notice of References, the County elaborates that "it is good public policy for

**MEMORANDUM DECISION AND ORDER - 16**

government entities to work together to lighten the burdens of the other where it is just, reasonable, and appropriate to do so." Dkt. 61, ¶ A. The Court acknowledges the Plaintiffs did not have the opportunity to respond to this statement, but the Court finds it does not necessarily disagree with such statement. However, the issue in this case is has the County shown that the exemption to the City of Rigby is "just, reasonable and appropriate" under the Equal Protection clause of the Fourteenth Amendment.

Non-profit entities do receive benefits in our society. For example, contributions to charitable organizations provides a tax deduction to the donor and the non-profit does not have to pay tax on the income it receives. A municipality such as a city is a local governing body and it is a governmental entity, but it does mean it is a non-profit corporation. *See, e.g., City of Ketchikan v. Cape Fox Corp.,* 85 F.3d 1381 (9th Cir. 1996). Under Idaho law, the City of Rigby is a municipal corporation, not a non-profit corporation. *See* Title 50 of the Idaho Code. This may seem like semantics, but words used by lawmakers matter. Justifications by lawmakers matter. In this case the County Commissioners in their affidavits used the term "non-profit entity." The Court respectfully finds this term does not include governmental entities like the City of Rigby.

The problem in this case is the County has failed to provide rationale to support why the City's public operator of garbage collection (City of Rigby sanitation department) is not similarly situated to the for-profit garbage collectors such as Eagle Rock in Jefferson County. Both the governmental entity and the for-profit entities provide a similarly essential public service – picking up and disposing of garbage at the County landfills. By giving an

**MEMORANDUM DECISION AND ORDER - 17**

exemption to the City of Rigby, the cost to the other residents in the County to have their garbage picked up by a commercial hauler is increased.  City of Rigby has a population of 3,945 people which is approximately 15% of the total Jefferson County population of 26,140.[6] This is not a de minimus amount of garbage that is being disposed of by the City in the County's landfill for free. The City estimated the dumping fee would be an estimated $84,000 to $100,000 expense for the City.

If the exemption was to promote public service or cooperation between governmental entities, it is unclear how giving preferential treatment to one city in the county is equitable when that city is providing the same essential public service of trash collection and disposal as the for-profit commercial haulers.  The Court finds this is discrimination against the for-profit commercial haulers and the discrimination is intentional by the County.

 Governmental entities working together may be good public policy, but whether or not that public policy can be used to satisfy an equal protection requirement is a different question. The Court finds this "non-profit" classification does not promote the County's legitimate governmental interests in charging the dumping fee and the exemption to the City of Rigby makes no logical sense and is not supported by the record as being a fair means to satisfy the policies of using the dumping fees to generate revenue to operate the landfills. There is no evidence in the record that the City of Rigby picks up and disposes of its

---

[6]Plaintiffs Ex. E in Dkt. 48-6 sets forth the Rigby population in 2009.  Since the dumping fee was passed in 2011, it seems more accurate for the Court to use 2010 census data for the City of Rigby and Jefferson County. See http://www.zip-codes.com on November 20, 2013.

**MEMORANDUM DECISION AND ORDER - 18**

residents' trash for free.  It is presumed that the City of Rigby charges its residents for this service based on the City's costs for labor and equipment to pick up the trash of its citizens. The fee charged to the residents is not because the City is a governmental entity or non-profit entity, the fee charged is based on the City's cost to provide such service.  While the City may or may not charge a fee that exceeds its actual costs, it is still a commercial hauler of garbage within Jefferson County.

Legislation will be upheld so long as there is a rational relationship between the ends of the law and the means used to achieve those ends. *See Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000).  Without any evidence of other consideration provided by the City to the County for the free garbage disposal at the County landfills, the Court finds the County has failed to provide and this Court cannot conceive on the facts presented, a rational basis for treating the City of Rigby different than other commercial haulers of garbage.  *See Club Italia Soccer & Sports Org, Inc. v. Charter Twp. of Shelby, Michigan,* 470 F.3d 286, 299 (6th Cir. 2006), overruled on other grounds as recognized by *Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir. 2012).

This case is not a situation where the County has rationally justified imposing lesser restrictions or fees on the public operator of the County's own garbage collectors. *See Bench Billboard Company v. City of Toledo*, 499 Fed. Appx. 538, 548 (2012) ("given the importance of low-cost public transportation, the city rationally can impose lesser restrictions on the public operator of its transit system than on others not in the business of providing a similarly essential public service.") In this case, there is no rational basis for providing an

exemption to a different municipality's public operator providing a similarly essential public service as the other commercial haulers in the County.

### 2) Jefferson County Resident Classification

Hathaway's argument that he is being treated different than other county residents who have their garbage picked up the City of Rigby commercial hauler. Hathway has to pay extra to have his garbage dumped at the landfill because his garbage hauler is subject to the dumping fee. Hathaway does not dispute that he has to pay a commercial hauler to pick up his garbage, only that his commercial hauler is not treated the same as other commercial haulers.  Based on the same analysis discussed earlier regarding for-profit and non-profit commercial haulers, the Court finds the County is intentionally discriminating against county residents who have their garbage hauled by a commercial hauler other than the City of Rigby. The County has not established a rational basis for the classification and that the classification  promotes a legitimate governmental interest.  Therefore, the County's policy is in violation of the Equal Protection Clause for certain county residents that do not reside within the City of Rigby.

### E.  Summary

The underlying premise of the United States Constitution is that the rule of law applies to all.  Under the Fourteenth Amendment, the County Commissioners cannot take action in violation of the Equal Protection clause. The record shows that the challenged legislation had legitimate purposes, but there was no plausible reason for the classifications and the classifications did not promote the legitimate governmental interests.

**MEMORANDUM DECISION AND ORDER - 20**

As such even viewing the facts in a light most favorable to the County, the Court finds Plaintiffs are entitled as a matter of law to *sua sponte* summary judgment in their favor on the § 1983 claim as Plaintiffs have shown that the Defendant's actions resulted in a deprivation of a constitutional right. Here, the Plaintiffs have established that the County acted in a discriminatory manner without a rational basis to support such discrimination and the discrimination was intentional. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted). Therefore, Plaintiffs are entitled to summary judgment on their § 1983 claims regarding the dumping tipping fee.

### 2.      State Law Claims

Having reviewed the state law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Supplemental jurisdiction exists where jurisdiction is exercised over a claim that is part of the same case or controversy as another claim over which the court has original jurisdiction. Black's Law Dictionary, p. 931, 9th Ed.; *see also* 28 U.S.C. § 1367. Section 1367(c) identifies four reasons for declining supplemental jurisdiction where:

1.      the claim raises a novel or complex issue of State law,
2.      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
3.      the district court has dismissed all claims over which it has original jurisdiction, or
4.      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the fourth factor is the basis for this Court declining jurisdiction. The state law

**MEMORANDUM DECISION AND ORDER - 21**

claims are moot based on the finding the dumping fee is unconstitutional.  The County will have to draft a dumping fee policy that satisfies the Equal Protection clause and the new policy may or may not raise the same state law issues. Moreover, the Court concludes the state law matters are more appropriately decided by the state court. Accordingly, the state law claims are dismissed as being moot.


# ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 26) is **DENIED IN PART.**  The Court **GRANTS** summary judgment in favor of Plaintiffs on the 42 U.S.C.  § 1983 claim. The dumping fee policy for commercial haulers dumping in the county landfill is unconstitutional and is void.  This ruling is dispositive of the case and the Court need not address the other arguments raised by Defendant for summary judgment.

2. Plaintiffs' Motion for Partial Summary Judgement (Dkt. 41) is **DENIED AS BEING MOOT.**

3.  Plaintiffs' Motions to Strike (Dkt. 50, 58) are deemed **MOOT**.

4.  Plaintiffs' counsel is to submit a proposed judgment consistent with this Order for the Court's approval and entry forthwith.

**MEMORANDUM DECISION AND ORDER - 22**

5.  The trial in this matter is **VACATED.**

DATED:  **November 22, 2013**

Honorable Edward J. Lodge
U. S. District Judge